UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| ANGELA MENNA, Special Administrator of the Unsupervised Estate of Reno Riggle, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| LAWRENCE COUNTY SHERIFF'S DEPARTMENT; MIKE BRANHAM, in his official capacity as Sheriff of Lawrence County; TRAVIS SANDERS, in his official capacity as Jail Commander of the Lawrence County Jail; MICHAEL RAMOS, individually and in his official capacity as a jail officer of the Lawrence County Jail; WILLIAM MILLER, individually and in his official capacity as a jail officer of the Lawrence County Jail; MICHAEL ROLL, individually and in his official capacity as a jail officer of the Lawrence County Jail; JANE DOE and JOHN DOE, individually and in their official capacities as jail officers of the Lawrence County Jail, and ADVANCED CORRECTIONAL HEALTHCARE, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CAUSE NO.: 4:19-cv-178 |
| Defendants. | ) | |

## COMPLAINT FOR DAMGES AND JURY DEMAND

Comes now Plaintiff, Angela Menna, Special Administrator of the ESTATE OF RENO

RIGGLE, deceased, by counsel, Stephen M. Wagner and Laura M. Swafford of WAGNER

REESE, LLP, and for her cause of action against the Defendants, LAWRENCE COUNTY

SHERIFF'S DEPARTMENT, MIKE BRANHAM, in his official capacity as Sheriff of Lawrence

County (hereinafter "BRANHAM"), TRAVIS SANDERS, in his official capacity as Jail

Commander of the Lawrence County Jail (hereinafter "SANDERS"), MICHAEL RAMOS,

individually and in his official capacity as a jail officer of the Lawrence County Jail (hereinafter

"RAMOS"), WILLIAM MILLER, individually and in his official capacity as a jail officer of the

Lawrence County Jail (hereinafter "MILLER"), MICHAEL ROLL, individually and in his official capacity as a jail officer of the Lawrence County Jail (hereinafter "ROLL"), JANE DOE and JOHN DOE, individually and in their official capacities as jail officers at the Lawrence County Sheriff's Department (hereinafter "Unknown Jail Personnel"), and ADVANCED CORRECTIONAL HEALTHCARE, INC. (hereinafter "ACH), alleges and states as follows:

## JURISDICTION AND VENUE

1.      This is a civil rights wrongful death action brought for violations of the Fourteenth Amendment of the Constitution of the United States of America made actionable pursuant to 42 U.S.C. § 1983.

2.      Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. §§ 1983 and 1988.  Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

## PARTIES

4.      On August 7, 2018 by Order of the Lawrence County Circuit Court under Cause Number 47C01-1808-EU-000088, the Plaintiff, Angela Menna, was appointed Special Administrator of the Unsupervised Estate of Reno Riggle, deceased, and in such capacity brings this cause of action against the Defendants.

5.      At all relevant times herein, the decedent Reno Riggle (hereinafter "RENO") was unmarried and a citizen of the United States of America, State of Indiana, City of Bedford, County of Lawrence.  RENO is survived by a minor child.

6.     Defendant BRANHAM is the Sheriff of Lawrence County, Indiana, and at all relevant times hereto was acting under color of state law.  Defendant BRANHAM is sued in his official capacity only.

7.     At all relevant times herein, the Sheriff of Lawrence County was responsible for enforcing the rules and regulations of the Lawrence County Sheriff's Department and Lawrence County Security Center (hereinafter "Jail") and for ensuring that the Lawrence County Jail Officers obeyed the laws of the State of Indiana and the United States of America.

8.     At all relevant times herein, Defendant SANDERS was the Jail Commander of the Jail and was acting under color of state law.  As such, he was the commanding officer of the Jail and in charge of its daily operations and the training, supervision and conduct of Defendants RAMOS, MILLER and ROLL, and the Unknown Jail Personnel (collectively "Defendant Jail Officers"), as more fully set out *infra*.  He is sued in his official capacity only.

9.     At all relevant times herein, Defendant SANDERS was responsible for enforcing the rules and regulations of the Jail and for ensuring that the Defendant Jail Officers obeyed the laws of the State of Indiana and the United States of America.

10.     At all relevant times herein, the Defendant Jail Officers were employed by the Lawrence County Sheriff's Department and were assigned to work at the Jail.  Said Defendants were acting under color of state law and within the scope of their authority and employment, and as agents for the Lawrence County Sheriff's Department.  They are sued in their individual and official capacities.

11.     At all relevant times, Defendant, LAWRENCE COUNTY SHERIFF'S DEPARTMENT, was a law enforcement agency in Lawrence County, Indiana, and was in charge of, among other duties, overseeing the operation of the Jail, including adequately staffing the jail with

3

properly trained jail officers so as to monitor the safety and well-being of the individuals housed at the jail.

12.     At all relevant times, Defendant, ACH, was a for-profit foreign corporation providing medical and mental health services to inmates and/or detainees at various correctional facilities in Indiana and in other states.

13.     At all relevant times, Defendant, ACH, was not a "qualified provider" as defined in I.C. 34-18-2-24.5.

14.     At all relevant times, the ACH was contracted to provide medical and mental health treatment to detainees and inmates at the Jail.

## BACKGROUND

15.     On October 18, 2017 at approximately 7:41 PM, RENO was arrested by Officer Housel of the Lawrence County Sheriff's Department on charges of (1) operating a motor vehicle while intoxicated, with prior arrests, (2) resisting arrest, and (3) invasion of privacy.

16.     At the time of his arrest, RENO appeared highly intoxicated.  RENO submitted to a portable breathalyzer test which registered a blood alcohol content ("BAC") of .37.  Based on the results, REMO was deemed "too drunk to go to jail" by the arresting officer and was transported to IU Health Bedford Hospital for evaluation and medical clearance.

17.     Upon arrival at IU Health Bedford Hospital, RENO provided a social history which included "Alcohol use:  Regularly, drinks five (5) servings of alcohol daily."

18.     At approximately 8:56 PM, RENO submitted to bloodwork at the hospital which revealed an ethanol concentration level of 448 mg/dL (.448 BAC), which was more than five (5) times the legal limit in Indiana (.08 BAC). This BAC is can induce coma and can be deadly.[1]

---

[1] See https://www.alcohol.org/effects/blood-alcohol-concentration/.

19.     While at the hospital, RENO's blood pressure was recorded as 148/97 which is extremely high.

20.     Due to RENO's exceedingly high BAC and high blood pressure, he was admitted to IU Health Bedford for observation, treatment, and additional testing.

21.     At approximately 11:02 PM a second BAC was performed.  The test results revealed a slight decrease in ethanol concentration to 382 mg/dL (.382 BAC).

22.     On October 19, 2017, at approximately 12:47 AM, a third blood sample was taken from RENO with results of 338 mg/dL (.338 BAC).  RENO was discharged from IU Health Bedford at 1:38 AM.

23.     At the time of discharge, the arresting officer was provided education material for "Alcohol Intoxication" which stated in part:

> Call 911, if any of these occur:
> - Trouble breathing or slow irregular breathing
> - Chest pains
> - Sudden weakness on one side of your body or sudden trouble speaking
> - Heavy bleeding or vomiting blood
> - Very drowsy or trouble awakening
> - Fainting or loss of consciousness
> - Rapid heart rate
> - Seizures

The arresting officer was also provided with written discharge instructions which stated in part:

> Call your healthcare provider right away if any of these occur:
> - Severe shakiness
> - Fever over 100.4 degrees

24.     Following his discharge from IU Health Bedford Hospital, RENO was transported to the Jail, located at 1401 I Street, Bedford, Indiana and turned over to RAMOS and MILLER for booking.

25.     The arresting officer provided the discharge instructions from the hospital to RAMOS and MILLER.

26.     During the booking process, RAMOS performed a portable breathalyzer test on RENO which registered a .22 BAC.

27.     Pursuant to protocol, at approximately 2:30 AM, RENO was placed in the "detox cell" to begin his 12-hour waiting period before placement into a cell block.

28.     RENO remained in the detox cell until 10:00 AM when he was escorted to the infirmary due exhibiting signs of alcohol withdrawal including severe shakiness, fever, rapid heart rate and confusion.

29.     RENO was evaluated by a nurse employed by Defendant, ACH, who was acting in the course and scope of her employment with Defendant, ACH.

30.     The nurse employed by Defendant, ACH, was aware of the written discharge instructions from the hospital.

31.     The nurse was aware that RENO had been displaying obvious signs and symptoms of acute alcohol withdrawal and Delirium Tremens (DT's), but the nurse nonetheless failed to obtain emergency medical treatment for RENO in violation of the written discharge instructions from the hospital.

32.     Instead, the nurse employed by ACH sent RENO back to the detox cell with instructions to the Defendant Jail Officers to place him on a medical watch for alcohol withdrawal.

33.     RENO was then returned to the detox cell at approximately 10:30 AM.

34.     From the time RENO was returned to the detox unit until approximately 8:53 PM, other than receiving his meals, none of the Defendant Jail Officers performed a wellness check on RENO.

35.     After RENO was returned to the detox unit, the Defendant Jail Officers failed to check on RENO as ordered by the nurse and as required by Jail policy.

36.     At 8:53 PM another detainee was placed in the detox cell. That detainee immediately alerted RAMOS and ROLL that RENO "wasn't doing well."

37.     At 8:53 PM the detainee also advised RAMOS and ROLL that RENO had been "shaking."

38.     At 8:53 PM the detainee also advised RAMOS and ROLL that RENO had been "making funny noises."

39.     At that time RAMOS and ROLL entered the detox cell and observed RENO lying prone, with his jumpsuit over his head.  ROLL pushed on RENO but was unable to rouse him.

40.     RAMOS was likewise unable to rouse RENO.

41.     RAMOS noted that RENO was sweating and making gurgling and moaning sounds.

42.     RAMOS confirmed that RENO was still alive shortly after 8:53 PM because RENO "still had a pulse."

43.     Both RAMOS and ROLL ignored RENO's obvious signs of medical distress and left the detox cell without summoning medical help.

44.     From 8:53 PM until 11:53 PM no wellness checks were performed on RENO.

45.     At 11:53 PM, ROLL AND MILLER moved three detainees to the detox cell.

46.     After placing the detainees in the detox cell at approximately 12:05 AM on October 20, 2017, one of the detainees began beating on the detox cell door.  MILLER returned to the door and was informed by one of the detainees that RENO "was dead and not moving."

47.     MILLER left the detox cell and reported the incident to RAMOS.

48.     MILLER and RAMOS returned to the detox cell and found RENO faced down, unresponsive, pulseless, purple in color, and stiff to the touch.

49.      RAMOS instructed MILLER and ROLL to remove the detainees from the cell while he notified the shift commander of RENO's condition and requested dispatch call an ambulance.

50.     RAMOS then returned to the detox cell and began performing chest compressions until emergency medical personnel arrived on the scene.

51.     Emergency medical personnel arrived at the Jail and were directed to the detox cell. They assessed RENO's condition and immediately noted that he was deceased as evidenced by obvious rigor mortis and lividity in the face and neck area.

52.     RENO was officially pronounced dead at 12:55 AM.

53.     From the time RENO was returned to the detox unit at approximately 10:30 AM on October 19, 2017 until he was found unresponsive and likely deceased at 12:05 AM on October 20, 2017, no medical provider from Defendant, ACH, checked on RENO.

## CLAIMS FOR RELIEF

### Count I – Claim for Deliberate Indifference
### Against the Defendant Jail Officers and ACH

54.     Plaintiff hereby incorporates by reference paragraphs 1 through 53 of her Complaint for Damages and Jury Demand as if fully set forth herein.

55.     During his detention at the Jail, RENO was at obvious risk for alcohol withdrawal and DT's.

56.     During his detention at the Jail, RENO displayed obvious signs and symptoms of severe alcohol withdrawal and DT's including severe shakiness, fever, rapid heart rate, confusion, seizure activity, and eventually non-responsiveness, which required emergency medical attention.

57.     During his detention at the Jail, the Defendant Jail Officers and ACH personnel, including but not limited to the Jail nurse employed by ACH, were deliberately indifferent to RENO's serious medical condition and ignored his obvious need for emergency medical care.

58.     During his detention at the Jail, the Defendant Jail Officers and ACH personnel, including but not limited to the Jail nurse employed by ACH, were deliberately indifferent to RENO's serious medical condition and ignored his obvious need to be monitored for severe withdrawal symptoms and DT's.

59.     The failure of the Defendants to monitor RENO for withdrawal symptoms and the failure to provide RENO with emergency medical treatment in a timely manner, all demonstrates a total lack of regard for his right to be free from unnecessary and unlawful bodily harm.

60.     The acts and omissions of the Defendants as described herein were done willfully, wantonly, and maliciously, and with such reckless disregard of the consequences as to reveal a conscious and deliberate indifference to RENO's serious medical condition which resulted in his untimely and tragic death.

61.     The Defendants herein are responsible for RENO's death as a result of their intentional, willful, wanton, reckless, and/or negligent acts and omissions, including but not limited to the failure to properly screen him when he arrived at the jail; failure to provide medical care; failure to monitor, protect and provide for the safety of RENO while he was detained; failure to monitor RENO for severe alcohol withdrawal and DT's symptoms; failure to timely contact emergency medical personnel to transport RENO to the hospital; and the failure of supervisory

officers, particularly BRANHAM and SANDERS, to train and supervise their officers, deputies, and staff.

62.     As a direct and proximate result of the aforementioned conduct of the Defendants, RENO was deprived of the rights, privileges, and immunities secured to him under the Constitution and laws of the United States of America, including his rights under the Fourteenth Amendment to the United States Constitution.

63.     As a direct and proximate result of the wrongful acts and omissions of Defendants as described above, RENO died, and therefore, the Plaintiff seeks to recover damages for the wrongful death of RENO, including his funeral and burial expenses, expenses incurred in the administration of his estate, reasonable attorney fees and costs pursuing this action, and any and all other damages allowed by state and federal law.

**Count II – Claim for Deliberate Indifference Against**
**Defendants, BRANHAM and SANDERS**

64.     Plaintiff hereby incorporates by reference paragraphs 1 through 63 of her Complaint for Damages and Jury Demand as if fully set forth herein.

65.     Defendants, BRANHAM and SANDERS, had a duty to train and supervise the Defendant Jail Officers regarding how to monitor and provide a safe environment for detainees withdrawing from alcohol such as RENO.

66.     Defendants, BRANHAM and SANDERS, were deliberately indifferent to the obvious need for supervising and training the Defendant Jail Officers regarding how to monitor detainees withdrawing from alcohol such as RENO.

67.     Defendants, BRANHAM and SANDERS, were deliberately indifferent to the obvious need for adequate staffing at the Jail and failed to ensure there were enough jail officers on duty to safely monitor detainees at risk such as RENO who was withdrawing from alcohol.

68.     The inadequate staffing at the Jail had been noted on the Jail's annual inspections by the Indiana Department of Corrections for several years prior to RENO's death.

69.     Defendants knowingly maintained an unconstitutional policy and practice of failing to adequately staff the Jail, which put detainees such as RENO at risk.

70.     By failing to provide RENO with constitutionally adequate care and supervision and by failing to adequately staff the Jail, Defendants, BRANHAM and SANDERS, knowingly disregarded an excessive risk to RENO's health and safety and knowingly subjected him to pain, physical and mental injury, and death, thereby violating his rights under the Fourteenth Amendment to the United States Constitution.

71.     As a direct and proximate result of the aforementioned conduct of Defendants, BRANHAM and SANDERS, RENO was deprived of the rights, privileges, and immunities secured to him under the Constitution and laws of the United States of America, including his rights under the Fourteenth Amendment to the United States Constitution.

72.     As a direct and proximate result of the wrongful acts and omissions of Defendants as described above, RENO died, and therefore, the Plaintiff seeks to recover damages for the wrongful death of RENO, including his funeral and burial expenses, expenses incurred in the administration of his estate, reasonable attorney fees and costs pursuing this action, and any and all other damages allowed by state and federal law.

## Count III – Negligence Claim Against Defendants

73.     Plaintiff hereby incorporates by reference paragraphs 1 through 72 of her Complaint for Damages and Jury Demand as if fully set forth herein.

74.     In accordance with Indiana statute, Defendants were timely served with a Notice of Tort Claim on April 11, 2018 by certified mail.

75. Pursuant to Indiana statute, the Plaintiff's tort claim has been constructively denied as Defendants have had more than ninety (90) days to investigate the claim but have failed to respond in any manner.

76. The Defendants herein are responsible for RENO's death as the result of their intentional, willful, wanton, reckless, and/or negligent acts and omissions, including but not limited to the failure to provide medical care and/or treatment to RENO; failure to monitor, protect and provide a safe and healthy environment for RENO while he was detained, including adequately monitoring RENO for withdrawal symptoms; failure to provide RENO with emergency medical treatment in a timely manner; and, with regard to BRANHAM and SANDERS, the failure to properly train and supervise the Jail Officers and adequately staff the Jail.

77. Defendants, BRANHAM, SANDERS and the LAWRENCE COUNTY SHERIFF'S DEPARTMENT negligently hired, supervised, and retained the Defendant Jail Officers when they knew, or should have known, that said Jail Officers were not properly trained and were otherwise unfit for service.

78. As a direct and proximate result of the wrongful acts and omissions of Defendants as described above, RENO died, and therefore, the Plaintiff seeks to recover damages for the wrongful death of RENO, including his funeral and burial expenses, expenses incurred in the administration of his estate, reasonable attorney fees and costs pursuing this action, and any and all other damages allowed by state and federal law.

**WHEREFORE,** Plaintiff, Angela Menna, as Special Administrator of the Unsupervised Estate of Reno Riggle, deceased, requests the following relief:

a. An award of compensatory damages based on Plaintiff's 42 U.S.C. § 1983 claim for the violation of Reno Riggle's constitutional rights;

b.      An award of punitive damages against the Defendant Jail Officers based on Plaintiff's 42 U.S.C. § 1983 claim to punish Defendants for their callous or reckless indifference to Plaintiff's constitutional rights;

c.      An award of compensatory damages for the wrongful death of Reno Riggle, including but not limited to all damages allowed by the federal law and by the Indiana Wrongful Death Act, Indiana Code Section 34-23-1-2;

d.      An award of attorney fees and costs pursuant to 42 U.S.C. § 1988;

e.      Trial by jury; and

f.      All other relief just and proper in the premises.


Respectfully submitted,

**WAGNER REESE, LLP**


*/s/ Stephen M. Wagner*
Stephen M. Wagner, #18248-49
Laura W. Swafford, #32792-29
*Attorneys for Plaintiff*

## JURY DEMAND

Comes now the Plaintiff, by counsel, and hereby demands trial by jury against the Defendants on all issues set forth in this cause of action.

Respectfully submitted,

**WAGNER REESE, LLP**


*/s/ Stephen M. Wagner*
Stephen M. Wagner, #18248-49
Laura W. Swafford, #32792-29
*Attorneys for Plaintiff*

WAGNER REESE, LLP
11939 North Meridian Street
Carmel, IN  46032
Tel:     (317) 569-0000
Fax:     (317) 569-8088
Email:  swagner@wagnerreese.com
            lswafford@wagnerreese.com